WESTINGHOUSE ELECTRIC & MFG. CO. v. SARANAC LAKE ELECTRIC LIGHT CO.

SARANAC LAKE ELECTRIC LIGHT CO. v. WESTINGHOUSE ELECTRIC & MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 14, 1902.)

No. 63.

1. PATENTS—ANTICIPATION—ELECTRICAL DISTRIBUTION.

The Kennedy reissue patent, No. 11,031 (orginal No. 407,294), for an improvement in the method of distributing and regulating alternating electric currents by secondary generators, is void because the acts and omissions of the patentee, after the date of the alleged invention, worked an abandonment and dedication of the same to the public.

2. SAME—VALIDITY—INFRINGEMENT.

The Stanley patent, No. 469,809, for a system of electrical distribution by means of an alternating current generator and converters, or secondary generators, connected with the main-line conductors in multiple, includes, as a part of the invention shown, the so-called "Stanley rule" for ascertaining the proper length of primary coil, and so construed it was neither anticipated nor lacking in invention; nor is such patent void for prior use of the device at Great Barrington, Mass., which it appears was essentially for experimental purposes. Claims 1 and 3 also *held* infringed.

3. SAME—PRIOR PUBLIC USE.

The fact that a charge is made for the product of a new device or combination where the price charged is not remunerative is not conclusive evidence of public use, although it raises a presumption against experimental use, which can be overcome only by clear and convincing evidence.

Appeal from the Circuit Court of the United States for the Northern District of New York.

These are cross appeals from a decree of the circuit court, Northern district of New York. 108 Fed. 221. Suit was brought by complainant upon reissued letters patent No. 11,031 to Rankin Kennedy, September 24, 1889, and letters patent No. 469,809, to William Stanley, March 1, 1892. The circuit court held the Kennedy patent void, and the first and third claims of the Stanley patent to be valid and infringed.

J. Edgar Bull and Fredk. P. Fish, for complainants.

M. B. Phillipp and Chas. E. Mitchell, for defendants.

Before WALLACE and LACOMBE, Circuit Judges, and TOWNSEND, District Judge.

LACOMBE, Circuit Judge. The Kennedy patent is for an improvement in the method of distributing and regulating alternating electric currents by secondary generators. The patentee arranged secondary generators (transformers) in multiple. They had theretofore been arranged in series. When so arranged, they became self-regulating as to primary current and power; in other words, each transformer would take its proper share of current, varying according to the number of lights burning on it, so that the lights on one transformer were independent of the lights on another transformer. In the more technical language of the claim, the system "consists in producing in two or more derived circuits, constituting the primaries

of two or more secondary generators, a counter electro-motive force, which, when any secondary is open, is practically equal to the applied electro-motive force in its primary, and in controlling said electro-motive force by the current flowing in the corresponding secondary, when the secondary is closed in such manner that the current in the primary shall vary with, and be approximately inversely proportional to, the resistance in the secondary."

The judge who heard the cause at circuit held, among other things, that certain acts and omissions of Kennedy, taken together, worked an abandonment and dedication of his alleged invention to the public. We fully concur in his discussion of this branch of the case, which will be found in his opinion, and deem it unnecessary to add anything further, affirming so much of the decree as disposes of the Kennedy patent upon such opinion.

The patent to Stanley deals with the same branch of the electric art, and is an improvement on Kennedy's. After Kennedy had arranged his transformers in multiple, the lights on one transformer were independent of those on another, but nevertheless the candle power on any given transformer changed as the number of lamps lighted on that transformer varied. When more lamps were turned on the candle power of all went down, and when lamps were turned off the candle power of those remaining increased. Stanley's improvement was directed toward overcoming this defect.

The specification says:

"The factors of the operation of my system of distribution are employment of an alternating current generator supplying currents of approximately constant potential, main lines extending throughout the system of distribution, converters or transformers connected thereto, and translating devices located in the secondary circuits of the transformers, by the employment of which a sympathetic relation exists between the different operations of the system, to the end of maintaining a simple and accurate self-regulation, so that the absorption of energy by the generator is proportional to the energy usefully consumed. The current developed by the dynamo may be of as high potential as desired. * * * These converters may be of any construction, but are preferably constructed to have the greatest magnetic conductivity in their magnetic circuits. There are certain principles of construction which must be adhered to in the proportioning of the parts of the converter in order to secure the desired results. and which I will now state. It is necessary, in the first place, that the conductivity for magnetic force of the magnetic circuit of the converter shall be of so great value that when subject to all degrees of magnetization accruing from the various amounts of energy transformed its conductivity for magnetic force would be approximately the same. This point of construction is important for two reasons: First, the greatest economy of conversion is obtained when the rise and fall of magnetism in the core is proportional, as nearly as possible, to the rise and fall of the current in the primary coil, and this condition is attainable only by keeping the core far below the saturation point; and, second, the same condition secures the largest possible counter electro-motive force in the primary coils of the converters. This is indispensable for regulation, as hereinafter set forth. It is impossible to state the exact relation between the weight of the core and the strength of the current. I have found the minimum amount of iron necessary to produce satisfactory results to be one pound of iron for every twenty-five watts, which amount is equivalent to two pounds of iron per lamp, with the lamps heretofore generally used by me. * * * In the construction of the coils, P and S, the following principles are to be observed: The first thing to be determined is the length of the primary wire. This should be of such

length that, reacting self-inductively upon its own magnetic circuit, the average counter potential so produced approximately equals the potential applied to the primary circuit. When so constructed, an ammeter will practically show no current when the secondary circuit is open. To obtain these results in practice, I use the following method: I first choose the percentage of efficiency to be obtained. Then, having selected a type of magnetic circuit affording as great magnetic conductivity as possible, I apply such a length of primary conductor that acting self-inductively upon its core the difference of the counter potential and applied potential, multiplied by the current in the converter, shall equal the predetermined loss of energy inevitable in conversion, and vary the length of primary wire until the desired results are attained. It is obvious that the coefficients of induction in the dynamo and armature and converter may be made equal by energizing each circuit with the same induction. In the carrying out of my invention, it is possible to use the same coefficients of induction in the armature and the dynamo as are present in the primary circuit of the converter; but this equality is not necessary. Having by these means determined the length of the primary coil, the secondary is adapted to it in such a manner as to secure the desired potential according to the well-known laws affecting the operation of induction coils. I have usually related the potential of the secondary to the primary in the ratio of twenty to one. The size of the wire in the primary and secondary coils is in inverse proportion to their electro-motive forces."

The claims involved are:

"(1) In a system of electrical distribution, and in combination, an alternating current dynamo and converters electrically connected with the main-line conductors in multiple arc, and organized to transform the current in the main conductors into currents of less potential and greater quantity in the secondaries, each converter made with a primary coil containing such length of wire exposed to magneto-electric induction that, when operated by the dynamo with which it is to be used with its secondary circuit open, the electrical pressure and counter pressure in its primary circuit shall be equal with incandescent lamps or other translating devices in the secondary circuits; substantially as and for the purposes set forth." "(3) In a system of electrical distribution, and in combination, an alternating current dynamo and converters organized to transform the current generated by the dynamo into currents of less potential and greater quantity at or near the points of consumption, electrically connected with the main-line conductors in multiple arc, and having their primary circuits constantly closed, each converter adapted to the dynamo operating the system by making its primary coil of such length that, when supplied with its full proportionate share of the entire normal electro motive force of the machine, its secondary circuit being open, the electrical pressure and counter pressure in its primary circuit shall be approximately equal with translating devices in the secondary circuits of the converters to be cut out of the circuit when not in use, without the introduction of any resistance in the place of them, substantially as and for the purposes set forth."

As stated before, after the Kennedy improvement, a difficulty still existed in that the candle power went up or down as lamps on any particular transformer were turned on or off. Stanley suggested that the difficulty was due to an improper length of wire on the primary, and among much else he states precisely, specifically, and exactly what that length should be. The amount of wire for a given character of current supply cannot be stated in feet and inches, because it is, to some extent, dependent upon other things, such as the quality of iron employed in the core, the quality of copper used in the coils, the shape of the transformer, and the way the coils are applied. The Stanley patent, recognizing these variable elements, gives a rule applicable to all conditions. It says you may determine the proper length of the pri-

mary coil by connecting the transformer in circuit with the dynamo with which it is to be used, and then winding on wire until the loss indicated by the formula $C^2R$, with the secondary circuit open, equals a certain loss of energy.

The field of invention lies in that obscure and difficult art, which is so hard to be understood by those who have not constant practical experience with its phenomena, its laws, and its nomenclature, and deals with a branch of that art which is still evidently in dispute between those who have carefully studied it. It is fortunate, therefore, that we find the concession in defendant's brief that the rule above set forth for determining just what shall be the length of primary coil is not found in any prior patents or publications; for, with this concession, it is easy to determine from the record that there is no anticipation shown. It is contended, however, by the defendant that this so-called "Stanley rule" is no part of the invention claimed; that there is nothing in the claims requiring the rule to be considered as a part of the invention thereby covered; that it is merely in the nature of a recommendation, the patentee saying, "In practice I use the following method," being the so-called rule. The first claim (and in that respect the third claim uses similar language) prescribes for the primary coil "such length of wire exposed to magneto-electric induction that when operated by the dynamo with which it is to be used," under certain conditions, certain results will follow. Concededly the man skilled in the art would not have found in that art anything which would have told him precisely what that length of wire should be. The claim does not give any formula for determining what it should be, and, if the specification were equally silent, there might be some question as to whether Stanley had really contributed anything of importance to the art; certainly it would yet remain for others to inform the art just how to find out a length which would operate as indicated in the claim. But when the patentee in his claim enumerates as one element of his combination a wire of a length which will accomplish the result sought to be achieved, and his patent discloses a method for determining that length with mathematical exactness, his claim may fairly be sustained for the length thus shown, although it might be that some other length covered by the language of the claim, but not of the rule, would fall outside the claim. The "length of wire exposed," etc., "operated by," etc., "substantially as set forth," is the length of wire that the specification shows as the result of a given formula. The so-called "Stanley rule" is therefore a part of the invention disclosed and claimed in the patent,—indeed, it would seem to be the main part of that invention,—and, with the patent thus construed, the citations from the prior art show neither anticipation nor lack of invention. The whole argument of defendants on that branch of the case is so interwoven with the postulate that the Stanley rule is to be eliminated from the patent that when the postulate is not granted the argument becomes wholly unpersuasive.

The application for the Stanley patent was filed August 15, 1888, and defendant contends that prior to August 15, 1886, there was a public use by Stanley, at Great Barrington, Mass., of which town he was a resident, of a system of electrical distribution embodying the

combination of apparatus described and claimed in his patent. The testimony touching this alleged public use more than two years prior to application is voluminous, and the judge who heard the cause at circuit has reviewed it at length. The combination of apparatus was set up there, wires were strung, lights were lit in the premises of users in the town, and the plant run, with some intermissions, from March 16th to June 16th, when the dynamo broke down, and it was never operated again. A charge was made for lights, an extremely small one, insufficient to pay expenses, and intended really as a convenient way by which Stanley might avoid embroiling himself with his neighbors, as he probably would do if he gave free light to some and not to all. The plant was not large enough to furnish all the lights the town could use. The invention was of a character which required testing under conditions which could be found only when the test was made in public, and continued for a reasonable length of time, and, under the authorities, the charging of an unremunerative price for the product of the combination is not absolutely controlling, though it raises a presumption against experimental use, which can be overcome only by clear and convincing evidence. We concur with the judge at circuit in the conclusion that the use was experimental, and in the argument by which he reached that conclusion, except that we are inclined to attach little, if any, weight to the fact that the engine and generator were out of public view in an old mill, and the converters locked up. Such protection against the elements, and against tampering with important and dangerous parts of the apparatus, would be expected, even in purely commercial public use. The most persuasive evidence, in our opinion, is found in the circumstance that, when the Great Barrington plant broke down after its brief experience, the persons in control of the Westinghouse Company, for whose benefit (as assignee of the future patent) the combination of apparatus was kept at work, were still so unconvinced that the practical success of the system had been demonstrated that they expended thousands of dollars more in erecting another plant for a further use of the combination of apparatus at Lawrenceville,—a use that, concededly, was wholly experimental.

Infringement of the first and third claims is not substantially disputed, except upon the theory that the amount of iron contained in the cores of defendant's transformers is such as to take them out of the claims of the patent. The claims do not specify any particular amount of iron, but defendant contends that a statement in the specification (quoted above) to the effect that the minimum amount of iron should be "one pound of iron for every 25 watts" must be read into the claims. A careful perusal of the text of the specification shows this contention to be unsound. The patentee states that there are certain "principles of construction which must be adhered to" in proportioning the parts of the converter in order to secure the desired results; that "it is necessary" that the conductivity for magnetic force of the magnetic current of the converter shall be of so great value that, when subject to all degrees of magnetization accruing from the various amounts of energy transformed, its conductivity for magnetic force would be approximately the same; that "this point of construction is important, for

two reasons: First, the greatest economy of conversion is obtained where the rise and fall of magnetism in the core is proportional as nearly as possible to the rise and fall of the current in the primary coil, and this condition is attainable only by keeping the core far below the saturation point; and, second, the same condition secures the largest possible counter electro-motive force in the primary coils of the converters." "This," says the patentee in his specification, "is indispensable for regulation." Having thus set forth an "indispensable principle of construction," which may fairly be read into the claim, the patentee, in quite different language, states the precise proportion of iron to current which he has used successfully. "It is impossible," he says, "to state the exact relation between the weight of the core and the strength of the current. I have found the minimum amount of iron necessary to produce satisfactory results to be one pound of iron for every twenty-five watts, which amount is equivalent to two pounds of iron per lamp with the lamps heretofore generally used by me. Thus, in constructing a converter designed to supply twenty incandescent lamps, I use a core weighing about forty pounds." We are clearly of the opinion that defendants do not escape infringement of the first and third claims by reason of their using one pound of iron, instead of two, for a 50-watt lamp, so long as they adhere to the "indispensable principle" of construction set forth in the specification. Inasmuch as the proof shows that their construction does so adhere, their device infringes.

The decree of the circuit court is affirmed, with costs.

### Memorandum on Motion for Reargument.

PER CURIAM. The motion for reargument is denied. It was supposed that upon the argument defendant's counsel practically conceded that the Stanley rule, as stated by the court, was not found in any prior patents or publications. If this supposition be incorrect, nevertheless we find in the record no prior patent or publication which states that one "may determine the proper length of the primary coil by connecting the transformer in circuit with the dynamo with which it is to be used, and then winding on wire until the loss indicated by the formula $C^2R$, with the secondary circuit open, equals a certain loss of energy." As to infringement, this court in sustaining the circuit court did not deem it necessary to add anything to the opinion below.