JAY et al. v. SPARKS-WITHINGTON CO.

(District Court, N. D. Ohio, E. D. October 18, 1918.)

No. 399.

1. PATENTS ⬙328—VALIDITY—VACUUM TANKS FOR AUTOMOBILES.
   Claim 1 of the Higginson & Arundel patent, No. 1,067,814, claims 1, 3, 9, 13, and 14, of the Jay patent, No. 1,132,275, and claims 1, 2, 4, and 5, of the Jay patent, No. 1,134,457, are valid and disclose invention, but were not infringed, except as to claims 9 and 14 of the Jay patent, No. 1,132,275.

2. PATENTS ⬙16—IMPROVEMENT.
   Where an art has been advanced step by step by a series of inventions, so that no one inventor can claim the complete whole, each inventor is entitled to the specific form of device which he produces, so far as it differs from those of his competitors.

In Equity. Bill by Webb Jay and the Stewart-Warner Speedometer Corporation against the Sparks-Withington Company. Decree for plaintiffs.

Wilkinson & Huxley and Burton & Burton, all of Chicago, Ill., and Hull, Smith, Brock & West, of Cleveland, Ohio, for plaintiffs.

Williams, Bradbury & See, of Chicago, Ill., and M. B. & H. H. Johnson, of Cleveland, Ohio, for defendant.

WESTENHAVER, District Judge. The bill in this case is the usual one charging infringement of certain patents and praying an injunction. The defenses are the usual defenses of invalidity and noninfringement. Complainants' bill is based on United States letters patent No. 1,067,814, issued to Higginson & Arundel, and Nos. 1,132,273 and 1,134,457, issued to Webb Jay. The Stewart-Warner Speedometer Corporation is the owner of the Higginson & Arundel patent, and the exclusive licensee of the Jay patents. Claim 1 of the Higginson & Arundel patent, claims 1, 3, 9, 13, and 14 of the Jay patent, No. 1,132,273, and claims 1, 2, 4, and 5 of the Jay patent, No. 1,134,457, are the only ones in issue. The article of commerce involved is a vacuum tank used for feeding gasoline to the carbureter of automobile engines. Defendant manufactures under United States letters patent No. 1,255,347, issued to W. Sparks.

Complainants' patents and precisely the same claims were in issue and litigated to a final judgment in the United States District Court for the Northern District of Illinois, Eastern Division. Judge Sanborn heard the case and filed a carefully prepared written opinion, a copy of which has been furnished me and is accessible to counsel. The title of the case is Webb Jay and Stewart-Warner Speedometer Corporation v. Frederick Weinberg and Auto Parts Co. (D. C.) 250 Fed. 469. The issues there involved as to the validity of complainants' patents were precisely the same as in the instant case. They were substantially the same on the issue of infringement, except as to claims 9 and 14 of the Jay patent, No. 1,132,273. This case was carefully heard and the different devices demonstrated at great length on the hearing. Counsel argued the case fully, both orally and by ably prepared briefs. A re-examination has been made by me of all the ques-

tions involved, but in view of the carefully prepared opinion of Judge Sanborn, and of the conclusions reached by me, I deem it sufficient if I state briefly, in such form as will be understood by counsel, and, if need be, by a reviewing court,· the grounds upon which I rest my decision, without an exhaustive statement of my reasons.

Neither complainants nor defendant is content to stand on the decision of Judge Sanborn. Complainants insist that the scope of their several patents has been unduly narrowed and limited, while defendant insists that these patents should all be held invalid for lack of novelty, or, in view of the prior art, for lack of invention. The weight to be given to his decision becomes, therefore, an important matter.

I have had this question under consideration in another case, namely, Meurer Steel Barrel Co. v. Draper Manufacturing Co., 260 Fed. 410, decided August 14, 1918. I there held that, while comity between courts of equal dignity in different jurisdictions does not require another court to abdicate its own judgment, it is important that in the interest of uniformity of ruling, and in order to avoid confusion in the law, prior carefully considered decisions should be adhered to until some higher court reaches a different conclusion. I there said:

"The force of this rule is well stated by Mr. Justice Brown in Mast, Foos & Company v. Stover Manufacturing Company, 177 U. S. 485 [20 Sup. Ct. 708, 44 L. Ed. 856]. It is said (177 U. S. 488, 20 Sup. Ct. 708, 44 L. Ed. 856), in substance, that comity is not a rule of law, but one of practice, convenience, and expediency, and has substantial value in securing uniformity of decision and discouraging repeated litigation of the same question. Its obligation is not imperative; if it were, the indiscreet action of one court might become a precedent, increasing in weight with each successive adjudication, until the whole country was tied down to an unsound principle. Comity recognizes the fact that the primary duty of every court is to dispose of cases according to the law and facts; in other words, decide them right, and in so doing, the judge is bound to determine them according to his own convictions. If his convictions be clear, he should follow them; but where, in his own mind, there may be a doubt as to the soundness of his views, comity comes into play and suggests a uniformity of ruling to avoid confusion until a higher court has settled the law. The strength of this rule increases in proportion to the number of courts which have passed upon the question, and when it appears that the prior judgment follows a final hearing upon pleadings and proofs and after a protracted litigation, and is the result of careful and painstaking consideration, greater weight should be given it. See, also, Macbeth v. Gillinder (C. C.) 54 Fed. 169; Beach v. Hobbs (C. C.) 82 Fed. 916; Penfield v. Potts (C. C. A. 6) 126 Fed. 475, 61 C. C. A. 371; Doelger v. German American Filter Company, 204 Fed. 274 [123 C. C. A. 472]; Cincinnati Butchers' Supply Company v. Walker, 230 Fed. 453, 144 C. C. A. 595."

The prior art introduced in evidence and considered by Judge Sanborn included all the prior art set up here, except United States letters patents No. 398,516, issued to Lentz, No. 477,295, issued to Charter, Nos. 844,958 and 901,190, issued to Riggs, and No. 1,025,814, issued to Lamp. Of these Lentz adds nothing to Savorgnan, No. 566,625; Lamp and Charter add nothing to Olds; and Riggs adds nothing to Tillison and sundry other similar patents. Other patents in the same art as these then in evidence were equally, if not more, pertinent citations, and, had they been then before the court, would not manifestly have modified the views of the learned District Judge.

Additional evidence is introduced here, also, in relation to the disclosure by publication of the Tice article in the "Motor" of June, 1911. Whether this publication antedates the Higginson & Arundel patents is much disputed. In the view I take of the case, it is unnecessary to determine this issue.

Much evidence was also introduced on this hearing to show that a device constructed according to the disclosures of the Tice article was operative, if not practicable, for use under normal road conditions. Complainant's reproduction of the Tice device, as demonstrated before Judge Sanborn, will operate only under a narrow range of vacuum pressure, and would not begin to function at a higher vacuum pressure than 9 to 11. Defendant has constructed a device in conformity to the disclosures of the Tice article, departing from the size and weight of the two cork floats for what seems to me sufficient reasons. The evidence convinces me that the device thus constructed would operate under a wider range of vacuum pressure, certainly from 3 to 19, and perhaps higher. There is, however, some difficulty in starting it at a higher vacuum than 14. Some allowance must be made for the inefficiencies of the vacuum pump and appliances used in these demonstrations; but these demonstrations, when taken in connection with other testimony that these devices had operated successfully under normal road conditions between Jackson, Mich., and Cleveland, Ohio, convinces me that defendant's contention as to the range of operation is fully sustained. This finding, however, does not require or justify that any greater weight should be given to the Tice publication in the prior art than was given to it by Judge Sanborn. Many defects remain therein, making against its practicability and efficiency. As much invention would, in my opinion, be required to obviate these defects as to obviate those present in the Higginson & Arundel invention.

The situation now before me is one justifying, if not requiring, the application of the rules of comity already stated, unless I am clearly convinced that Judge Sanborn's decision is wrong. It was made on a final hearing, upon pleadings and full proofs, and after protracted litigation, in which both sides were represented by able counsel. The differences in the record before me and that before him are immaterial, and his opinion contains internal evidences that he gave to his judgment careful and painstaking consideration. All of the questions involved are close, but, after a restudy of all of them, the weight of reasoning seems to me to support his conclusions. I am, therefore, adhering to them so far as applicable to the present case.

[1, 2] My conclusion, then, is that claim 1 of the Higginson & Arundel patent, No. 1,067,814, claims 1, 3, 9, 13, and 14 of the Jay patent, No. 1,132,273, and claims 1, 2, 4, and 5 of the Jay patent, No. 1,134,-457, are valid. As to their scope, I also adopt Judge Sanborn's conclusion, which he states as follows:

"They are unavoidably narrow. By no fair reasoning are they entitled to be any more than sustained on the ground that Mr. Jay, working along his own lines, which later brought success, is entitled to his own construction; and the same rule applies to Weinberg. 'If the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled to the specific form of the device which

he produces, and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs.' Adams Electric Ry. Company v. Lindell Ry. Company, 77 Fed. 432, 23 C. C. A. 223, quoting from Railway Company v. Sayles, 97 U. S. 554, 24 L. Ed. 1053."

Claim 1 of Higginson & Arundel patent, No. 1,067,814, claims 1, 3, and 13 of Jay patent, No. 1,132,273, and claims 1, 2, 4, and 5 of Jay patent, No. 1,134,457, are, in my opinion, not infringed. The reasons which induced Judge Sanborn to hold that the construction considered by him was not an infringement applies to each of these claims, and his reasoning commends itself to me as sound. Claims 9 and 14 of Jay patent, No. 1,132,273, are, in my opinion, infringed.

All these patents are for complete combinations. All the elements are old. Invention results only from the combination of these old elements. Jay is entitled to the specific form of device which he produced, and unless a complete and specific combination is claimed, and unless it is found in defendant's construction, there is no infringement. In my opinion, the combination of claims 9 and 14 are the only claims or combination which are reproduced with sufficient identity in defendant's construction to warrant a holding of infringement. Defendant's construction does reproduce the combination of claims 9 and 14, unless the snap-over mechanism, whereby the suction and atmospheric inlet valves are operated, is different. On the hearing before me, and in the briefs, the controversy as to infringement comes down to this element. Claims 9 and 14, it is asserted by defendant, must be limited in consequence of Patent Office proceedings to a snap-over mechanism producing absolute simultaneity of action; whereas, the snap-over mechanism of defendant's construction, it is insisted, does not produce such simultaneity. It is true that, when the gasoline in the upper chamber of defendant's tank is at a high level and the vacuum pressure is low, there is a perceptible interval between the unseating of the air inlet valve and the closing of the suction valve. It is also possible to halt the operation of the mechanism at this point under these conditions, and produce a flow of air through the air inlet and out the suction valve. Under all other conditions of operation there is substantial simultaneity of action. Whether this delayed action in the operation of the two valves is an advantage or disadvantage is disputed, but I am of opinion that it is accidental, and was not designedly produced in defendant's construction. The specifications of the patent under which defendant's device is constructed do not show any such method of construction, or claim any function or result on account of it. The snap-over mechanism as an element is present in both constructions, and in defendant's performs the same function as in complainants', and even if under some conditions it performs the same function, and does something more, it is none the less an equivalent, and not the substitution of a new element. This slight difference in operation under some conditions does not produce a new combination or avoid infringement of claims 9 and 14.

A decree may be taken in conformity to the conclusions herein set forth.