## ACME BRICK CO. et al. v. HEATH UNIT TILE CO. et al.

### No. 6036.

Circuit Court of Appeals, Fifth Circuit.

June 19, 1931.

Rehearing Denied July 17, 1931.

Melville Church and Halbert P. Brown, both of Washington, D. C., Leroy A. Smith, of Fort Worth, Tex., and Clarence B. Des Jardins, of Washington, D. C., for appellants.

J. W. Gormley, of Dallas, Tex., and Justin W. Macklin, of Cleveland, Ohio, for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

By the decree appealed from, Heath patent reissue No. 16,468, granted November 9, 1926, and covering a hollow tile building block and a system of wall construction, was held valid and infringed by appellants, who were enjoined during the life of the patent from manufacturing or selling hollow tile cubes for use in wall construction in the manner set forth in the patent, or from so using such cubes. The appellant Acme Brick Company is a manufacturer of hollow tile cubes, and was selling them to the other appellants, who were using them in construction. The patent was originally issued July 7, 1925, on an application filed April 4, 1923, and covered only a special sort of cubical hollow tile of an improved construction, with the use of that tile in building walls. The first five claims of the reissue are those of the original patent. Claims six to twelve inclusive are new, and purport to cover generally the use in walls of any hollow cubical blocks in the manner stated in these claims. The tiles made and sold by Acme Brick Company, although hollow cubes and of the size suggested in Heath's patent, 8"x8"x8", are conceded not to infringe his patent on tiles. None of the first five claims is therefore in issue here, but only the last seven, relating generally to the use of hollow cubes in wall construction. A use of them in the manner sought to be patented is admitted. The question is whether the method of construction was anticipated by prior use, patents, or publications, or invalid because no invention, but at most only skill in the art of masonry is disclosed. It may be assumed that the patentee advanced the art of hollow tile wall construction by his cubical tile formed to sustain weight, and to be easily cut, before or after burning, into halves and quarters, and made of a size to

work with standard brick with due allowance for mortar joints. The conveniences and economies resulting seem to have gained it commercial success. But, as stated, the claims of the patent which cover this tile and its use are not involved here. The useful and convenient size 8″x8″x8″, if mere size were a patentable matter, is not, as was assumed by the district judge, involved in any claim of the patent. The specifications picture and describe the cubes as having the dimension 2x, an algebraical symbol of indefiniteness, and the infringed claims on wall construction which alone are in issue name no dimension, but purport to cover all dimensions. Their language is rather obscure, but can be understood by reference to the accompanying specifications and drawings. Without detailed analysis or quotation of them, it will suffice to say that they purport to claim a monopoly of using cubical hollow blocks, and halves and quarters thereof, in building walls, with mortar joints, of 1, 1½, or 2 or more units in thickness where the courses are kept level with each other, and where the joints between the blocks, both longitudinally and transversely, are broken by placing the tile in one course equally across the joints in the course below, and where the ends and faces of the wall are filled out with fractions of the cubes, and where the blocks are placed with their open ends vertical at the corners of the wall instead of plugging the openings. It is plain that no single element in this method of construction was patentable. The use of hollow tiles instead of solid bricks or stone laid in mortar in leveled courses was confessedly old. The use of cubical tiles was anticipated generally by the use of cubical stones centuries ago, and specifically by the use of hollow tiles 12″x12″x12″ and also 8″x8″x8″ so early as the year 1917. Fractions thereof also were cut as needed at the job or turned out by the manufacturers. To turn such a cube on end when the openings would show at the corner of the wall instead of plugging them up would occur to any neat and skillful mason, who always chooses the best face of any unit to be exposed to view. To break transverse joints by placing the upper unit across the joint between two lower units is universal masonry practice, whatever the shape or size of the units. Where the wall is thicker than a single unit, so as to cause, also, longitudinal joints, it has always been the practice in stone, brick, and tile work to break this joint in a lower course by covering it with the units of a higher course. This in brick work is usually done by turning the brick endwise, and so making a "header course" every fifth or sixth course, but in "Flemish Bond" it is done by thus turning every alternate brick in each course. But this breaking of the longitudinal joint has been accomplished not only by turning a long unit such as a brick endwise, but also by simply laying a unit over this joint, thus setting the unit back half a unit's thickness from the face of the wall and then filling the wall out flush with a half unit. The superimposed unit then rests equally upon four units beneath, as stated in the patent. This practice is common in stonework, and is illustrated in figure 2 of a prior patent No. 1,215,149 granted to Heath February 6, 1917, and in the patent on wall construction No. 1,349,793 granted to Torosian on August 17, 1920. The breaking of joints, both transversely and longitudinally, as shown in Torosian's patent, is identical with that shown by the patent in controversy, except that the Torosian units, though square, are not high enough to make cubes. The patent, however, expressly discloses that any height units might be used, and plainly the height has nothing to do with the method of breaking joints. All the elements of Heath's process of construction are thus seen to be separately unpatentable. We are unable to see any invention in combining them. While the use of hollow tile in wall construction may be in a sense a separate art, it is so closely related to the general art of masonry that to apply to it things well known to masonry is only skill. If cubical hollow tiles and fractions or means of making fractions of them are given to a skilful mason to construct a wall by applying the common principles of masonry, he would undoubtedly use them precisely as disclosed in the Heath claim. A wall of a single unit's thickness would have its transverse joints broken as disclosed in this patent, for there is no other way to break them. If the wall be thicker than one unit, the longitudinal joints must also be broken in order to make a good wall, and this would usually and naturally be accomplished in the case of cubes just as set forth in the Heath and Torosian patents. The mason would also finish the ends of the wall with fractions, and conceal the open ends of the tiles all according to this patent as a matter of common skill. To sustain the patent would practically give this patentee a monopoly on building walls out of cubical hollow tiles, although he has no exclusive patent upon them, and could not have obtained one. It is conceded that the tiles of Acme Brick Company do not infringe Heath's patent on tiles, but neither they nor any other cubical tiles could be successfully used

at all if this patent were held good. Having found each element of the claimed method of wall construction to have been previously known and used, and the combination of them to involve only mechanical skill in the building art, we conclude that claims six to twelve inclusive are invalid. Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222; Powers-Kennedy Co. v. Concrete Mixing Co., 282 U. S. 175, 51 S. Ct. 95, 75 L. Ed. 278; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856; Keene v. New Idea Spreader Co. (C. C. A.) 231 F. 701.

The judgment is reversed, and the bill directed to be dismissed.