FOOD & FRUIT INDUSTRIES, Inc., v. NATIONAL FRUIT PRODUCT CO., Inc.

No. 4395.

Circuit Court of Appeals, Fourth Circuit.

Jan. 9, 1939.

Herbert J. Jacobi, of Washington, D. C. (Harry Kern, of Winchester, Va., on the brief), for appellant.

Clarence B. DesJardins, of Washington, D.C. (R. Gray Williams, of Winchester, Va., and Halbert P. Brown, of Washington, D.C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

Food & Fruit Industries, Inc., owner of United States patent No. 1,613,452, relating to a retort for treatment of fruits preparatory to canning, brought this suit for patent infringement. The District Court, finding no infringement, dismissed the bill. The patent was issued to Eugene G. Grab on January 4, 1927 upon an application filed December 19, 1925. The primary object of the invention was to provide an efficient device for carrying out the process for the treatment of fruits for canning purposes, set forth in an earlier patent No. 1,557,358, issued to Grab on October 13, 1925. The nature of the controversy before the court will be best understood by beginning with a description of the earlier patent.

In 1918, National Fruit Product Company, Inc., the defendant in the District Court, was engaged in the business of canning apples and employed Grab as a technical director and adviser. He had acquired experience in the field while working as chemist for the United States Government. Upon his advice, the defendant made use of the Sellar's process to extract the air and other gases from the apples, an essential step to prevent chemical deterioration of the cans and shrinkage of the fruit. Trays or baskets, containing pieces of the fruit, were placed in a vertical cylindrical retort through an opening in the top and immersed in water. A vacuum was created in the air space above the water in the retort and the gases were extracted from the fruit and replaced by the water.

The process covered by the first Grab patent was designed as an improvement upon the Sellars' process. Instead of water within the retort, steam was admitted after the creation of the vacuum. The result was that the apples, being almost devoid of water, were more solid and of a superior flavor. By 1924 the defendant used the patented process exclusively and on March 1, 1926, purchased the patent from Grab for $25,000.

The claims of the patent related to the process and were not limited to a particular size or shape of retort; but the type of retort disclosed by the specifications as preferable was a metal cylindrical retort provided with a removable top or cover; and this was the kind of retort used by the defendant before and after adopting the patented process. The structure had its drawbacks, since it opened only at the top, and the trays, containing the fruit, had to be introduced and removed by hoists at the expense of considerable time. The workmen removing the trays from the top of the retort were handicapped by the rising steam, and there was some difficulty in dispersing the steam evenly throughout the cylinder. In 1925, in order to overcome these difficulties, Grab designed a horizontal rectangular retort with openings in the opposite ends, equipped with an endless conveyor upon which the fruit was re-

886

ceived through an opening in one end, carried through the retort after treatment, and delivered through an opening in the other end. Drawings of the proposed structure did not meet with the approval of the mechanical engineer employed by the defendant who thought that a drive-shaft, extending through the side of the retort, would prevent the formation of the necessary vacuum; and consequently the defendant did not adopt the new form of retort at that time.

Shortly afterward, on September 15, 1925, Grab left the employ of the defendant, and on December 19, 1925, filed an application for a patent on the horizontal retort with the endless chain conveyor, and the patent in suit was issued to him on January 4, 1927. Grab states in the specification that the patent "relates to new and useful improvements in retorts and the primary object of the invention is to provide an efficient device for carrying out my improved method of treating fruits for canning purposes, as set forth in my patent No. 1,557,358." The device disclosed by the second patent consists of a rectangular horizontal retort inside of which is mounted an endless carrier occupying substantially the entire length of the chamber. This endless carrier moves over two sprocket wheels mounted at opposite ends of the inside of the retort, and these wheels are supported by shafts, one of which extends through the side wall of the retort to the outside where the power to set the endless carrier in motion is applied. Means are provided for the creation of a vacuum in the retort and for the injection of steam in accordance with the Grab process patent. The pieces of apple are fed onto the upper run of the endless carrier within the retort by means of a chute through a small door at one end. The carrier is set in motion for such time as is necessary to fill the upper run with apples coming through the chute. The carrier is then stopped; the retort sealed; and the apples treated. There are steam pipes both above and below the upper run of the carrier. In order to effect a more perfect distribution of the steam, the steam from the upper pipes is directed against the top of the retort and reflected onto the apple, and the steam from the lower pipes is rebounded against a baffle plate inserted for this very purpose. After the application of steam, the carrier is again set in motion; the treated apple is dropped through a door at one end of the retort; and additional untreated apple is dropped on to the carrier by means of the chute at the other end.

Infringement is charged with reference to claims 1 and 2 of the patent, which are as follows:

"1. Apparatus for the treatment of fruit comprising a closed retort, suction, means for rarifying the air in the retort, a conveyor for carrying the fruit along the retort, means for admitting steam into the retort and means for rebounding the steam toward the fruit as it passes through the retort.

"2. Apparatus for treating fruit comprising a retort, means for rarifying the air in the retort, a conveyor for carrying the fruit through the retort, steam pipes leading into the retort and having outlet openings disposed away from the run of the conveyor which carries the fruit and means for rebounding the steam toward the fruit."

When these claims are compared with the disclosures of the first patent, only one new element appears, that is, a conveyor for carrying the fruit along or through the retort. The earlier patent not only showed a closed retort, suction means for creating a vacuum, and means for admitting steam into the retort, but in addition showed distributing pipes immediately adjacent to the inner walls of the retort, provided with outlets so disposed that the steam emanating therefrom was directed against the walls of the retort and reflected therefrom, so as to cause the steam to be thoroughly circulated throughout the interior of the retort and to be distributed equally to the contents thereof.

The claims of the second patent do not expressly specify a horizontal retort, but the drawings show such a structure. The question of validity is presented favorably to the patent when inquiry is made whether it amounted to invention to substitute for the vertical cylindrical retort of the first patent a horizontal rectangular retort with openings at opposite ends thereof for the introduction and removal of the fruit and a carrier or conveyor means by which the fruit is conveyed from the entrance to the discharge end of the structure and is supported within during the treatment.

There are a number of examples in the prior art of the use of conveyors for the purpose of carrying articles of food through an enclosed structure. The Ball

patent, No. 7,778, issued November 19, 1850, related to an automatic bake oven. The bread was inserted through a door at one end and placed upon an endless carrier within the oven and after being carried the length of the oven by the carrier, was dropped out of the other end through another door. The Empson patent, No. 539,124, issued May 14, 1895, shows a cooking chamber or retort provided with endless chains connected by cross bars, carrying rollers, on which were placed the crates carrying the cans filled with the material to be cooked. Openings in opposite ends were provided for the introduction and the discharge of the material after treatment; and steam was admitted to the retort through an opening.

It was also known that endless carriers could be used to carry fruit through a box in which it was subjected to the action of steam. The Monte Patent, No. 858,094, issued June 25, 1907, showed such a structure in which the pieces of fruit were placed on an endless belt and subjected to the action of steam which entered through perforations in the steam pipes and rebounded from the bottom of the box so as not to play directly upon the fruit.

The Hall patent, No. 887,628, issued May 12, 1908, also showed an endless conveyor belt for the carriage of fruit through a retort in which it was subjected to the action of steam that entered through perforations in the steam pipe and rebounded from a collecting pan so as not to play directly upon the fruit.

It was also old to provide a horizontal retort with doors at opposite ends and tracks upon which trucks carrying the material could be rolled into the retort for treatment and out of the retort after treatment. Lissagaray patent, No. 184,162, issued November 7, 1876, disclosed such a structure and included a fan for withdrawing the heated air and gases from the chamber and pipes through which the steam might be introduced into the chamber. The Arnold patent, No. 1,216,260, issued February 20, 1917, also disclosed a vacuum box for the canning of fruit, which was horizontal in shape with a rectangular cross section and was equipped with doors at opposite ends. In the bottom of the retort were a plurality of rollers to facilitate the movement through the retort of trays carrying the fruit in open cans. The retort was connected with an air exhausting device.

The problem which Grab set himself to solve was to find a form of retort which would eliminate the difficulties involved in placing the fruit in the retort and removing it therefrom through an opening in the top. It would seem to be a simple change to substitute openings in the sides or ends, but whether or not the average person skilled in the art might be expected to reach this result with respect to an original problem, the answer was already at hand in the patents that had been issued in analogous undertakings. In view of these disclosures, it did not, in our opinion, amount to invention to provide that the process of the first patent should be carried on in the kind of retort disclosed in the second. "The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention." Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L. Ed. 438; Lovell Mfg. Co. v. Cary, 147 U. S. 623, 13 S.Ct. 472, 37 L.Ed. 307; Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 495, 20 S.Ct. 708, 44 L.Ed. 856.

There are other defenses urged to the suit. It is said that there is no infringement notwithstanding the adoption of the horizontal retort by the defendant after Grab left its employ, because the method adopted by the defendant for the carriage of fruit through the retort more nearly resembles the arrangement shown in the Arnold patent than that of the second Grab patent. Moreover, there is evidence tending to show that as early as 1927, Grab knew that the defendant was using horizontal retorts in its business, and it is admitted that between 1930 and 1933 Grab was again in the employ of the defendant and knew that the defendant was using the kind of retort which is now charged to infringe. Nevertheless, he remained silent, and asserted no claim that his rights were being violated until July 28, 1933, six weeks after he had again left the defendant's employ. On account of these circumstances it

888

is contended that he is now estopped from asserting infringement of the second patent, and that a grant to the defendant to use the second patent may be implied. But it is not necessary to consider these defenses in view of the invalidity of the patent.

The decree of the District Court that the bill of complaint be dismissed is affirmed.