CHASE NAT. BANK OF CITY OF NEW YORK et al. v. MOBILE & O. R. CO. et al.

Consol. Civ. No. 56.

District Court, S. D. Alabama, S. D.

Feb. 18, 1942.

Armbrecht, Inge, Twitty & Jackson, of Mobile, Ala., for petitioner William M. Chadbourne.

Carl Fox, of Mobile, Ala., contra.

ERVIN, District Judge.

This matter comes on to be heard on a petition seeking to have $19,000, withdrawn from the Southern District of New York by the Primary Receiver and used by him in operating the railroad outside of such District, returned to such district.

The facts are: a bill was filed in the Southern District of Alabama, the home of the Mobile & Ohio Railroad, averring that such railroad was insolvent, and that its creditors would seize its assets in various courts and disrupt its operations unless the court took possession and appointed a Receiver to operate it and conserve its assets.

Ernest E. Norris was appointed Receiver and was, under the order appointing him, given broad powers to take possession of the assets and the road, which ran from Mobile, Alabama, to St. Louis, Missouri, through several states and jurisdictions. Ancillary Receivers were appointed in each District through which it ran, and also in the Southern District of New York, where the same Receiver appointed in this District was appointed as Ancillary Receiver. Later that Court appointed an additional Receiver as Co-receiver.

Norris drew out of three banks in New York, the sum of $19,000 and used it in operating the road which did not run into such District, but did maintain an agency there to solicit business there and from adjacent territory to go over its and its

affiliate lines. Such agency was profitable, and was continued by the Primary Receivers up to the time of the making of the order by Judge Bondy directing the filing of the petition in this matter. The proof shows that the Primary Receivers paid over $100,000 as costs of maintaining such agency up to the time of the hearing before Judge Bondy, so that the money in such banks would have been used that way if it had not been drawn out.

Judge Bondy allowed the claims. He did not pass on the question as to whether the money should be ordered returned, but left that to me. He also suggested that the $19,000 would have been used in paying the costs of the office maintained by the Receiver in New York.

It is not questioned that if the money had been left in the banks and had been there when Judge Bondy allowed the claims, it could have been used in payment of such claims.

The question is, Was the use by the Receiver wrongful and were the claimants thereby injured?

If the Receiver had the right to withdraw and use the money in a proper expenditure, and did so, that ends the matter. If he had the right to withdraw it but could only use it in the New York District, and but for its use elsewhere, would have used it in the New York District, then the claimants were not injured by the use elsewhere by the Receiver.

In either event I should deny the petition.

When the original bill seeking the appointment of a Receiver was filed, there was pending in the State Court in New York a bill filed by John J. Neff and other stockholders of the Mobile & Ohio Railroad Company, against the Farmers Loan & Trust Company, the Southern Railroad Company, the Guaranty Trust Company of New York, and the Mobile & Ohio Railroad Company, seeking to hold the Farmers Loan & Trust Company and the others liable for a breach of trust.

After the appointment of the Ancillary Receivers by the New York Court, there was filed in such court, at the instance of the attorneys of plaintiffs in the Neff suit, a petition seeking to have the Ancillary Receivers intervene in the Neff suit. No notice of such petition was given the Primary Court, nor was any similar petition filed in the Primary Court, though if there had been a recovery in such suit, the proceeds so recovered after paying the costs and expenses, would necessarily have been reported to and administered by such Primary Court.

A hearing was had by the New York Court which showed that the claim was doubtful. There was no objection filed by the parties before the Court. The Court entered an order that the Ancillary Receivers intervene if their attorneys so advised. There was some objection to Norris because of a charge of conflicting interest, and Norris resigned as Ancillary Receiver.

After a lengthy trial in the State Court, resulting in an adverse decision, and two appeals affirming the judgment, it was found there was not sufficient funds in the hands of the Ancillary Receiver to pay the fees and expenses incurred by the Ancillary Receiver in the Neff suit. A hearing was had before Judge Bondy, of the District Court of the Southern District of New York, in which the claims were filed, and an order sought passing the claims and ordering the Ancillary Receiver to petition the Primary Court to order a refund of the $19,000 withdrawn by Norris. A stenographic copy of these proceedings was offered in evidence, from which it appears that among the claims filed, were some for services by attorneys who did not represent the Ancillary Receiver, as shown by a transcript of the Neff suit. No objection seems to have been made to any of them except as to the amounts, but the Court disallowed two of them, manifestly because they did not represent the Ancillary Receiver.

A careful reading of the transcript of these proceedings clearly shows a manifest and persistent effort to get the Court to make an order which would bind the Primary Court when the petition they sought should be presented to it, and a declination by Judge Bondy to make such an order.

It was shown when the intervention was sought that the claim was doubtful. The decree left the intervention to the decision of the attorneys of the Ancillary Receiver, who, as well as such Receiver, must have known at that time that if such suit were successful, the recovery would be for the benefit of the primary cause, and also that the costs and fees incurred would largely exceed any assets in or expected to be in, the custody of such Ancillary Receiver unless a recovery was had. Under the circumstances, it seems to me the intervention

was a voluntary one in which both the Ancillary Receiver and the attorneys participated, and that their fees and costs depended on a recovery of assets in such suit. They were intervening in a doubtful suit already pending, and on the decision of the attorneys, and not by direction of the Court. They made no provisions for the fees and costs if the suit were lost. They do not even show any agreement with the plaintiffs in such suit or their attorneys.

■ Where funds are brought into a cause to be administered, those whose efforts produce such funds are liberally compensated, but I know of no rule which compensates a volunteer who tries unsuccessfully to achieve this result. They take their chances on the result of their efforts. Buell v. Kanawha Lumber Corp., D.C., 201 F. 762, 769; Trustees v. Greenough, 105 U. S. 527, 26 L.Ed. 1157; Lamar v. Hall & Wimberly, 5 Cir., 129 F. 79; In re Marcuse & Co., D.C., 4 F.2d 814.

■ It is urged on me that under the rule of comity, I am bound by Judge Bondy's rulings to grant the petition. In the first place, Judge Bondy was careful not to try to bind me, as the proceedings show, where he constantly stated that it was for the Primary Court to decide. In the second place, the objections I make to granting the petition were not presented to and ruled on by him. Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 489, 20 S. Ct. 708, 44 L.Ed. 856.

■ It is contended that Norris could not withdraw money in the New York bank and use it in operating the road, without an order from the Judge there.

As heretofore stated, the railroad ran through several states and court jurisdictions, and while ancillary proceedings were had in all of them, the road had to be operated as a unit. Therefore the original order appointing the Receiver gave him great powers and in general terms.

It was not considered necessary for him to go to each ancillary jurisdiction and get an order from the Judge to draw a check on a bank in such jurisdiction in order to pay a specific bill. Such a limitation on his taking possession of and controlling and spending fluid assets in operating a railroad was not even contemplated, and if it was applied, would make the operation of such a railroad line as this, impossible by a receiver.

All claims against the Mobile & Ohio Railroad were filed in and considered by the Primary Court, and the railroad and its properties were sold as a unit under an order of the Primary Court. The New York Court order appointing the Ancillary Receiver was in the same terms as that of the Primary Court as to the powers of the Receiver.

I, therefore, hold that the Receiver, Norris, had the right under the terms of the order appointing him, to withdraw the money from the banks in New York and use the money as he did.

■ The rule that when there are assets in an ancillary jurisdiction sufficient to pay all creditors in such jurisdiction, these creditors will not be required to go elsewhere in order to get their money, is well recognized. •

■ So far as the record shows, there were ample funds in the custody of the Ancillary Receiver to pay all claims against the Mobile & Ohio Railroad, including fees of the Ancillary Receiver and the costs, except the fees and costs incurred thereafter by the intervention in the Neff suit.

The question before me may be said not to involve the rule just stated, but do the claims asserted as arising out of the intervention suit really constitute valid claims against the Mobile & Ohio Railroad and its assets in this cause?

As thus stated, I find they do not, so a decree will be entered denying the petition.

It is ordered and decreed that the petition of William M. Chadbourne, as Ancillary Receiver, to have the $19,000 withdrawn from the Southern District of New York by Ernest E. Norris, as Receiver of the Mobile & Ohio Railroad Company, returned to the Ancillary Receiver in New York, be, and the same is overruled and denied.