JAY et al. v. WEINBERG et al.

(District Court, N. D. Illinois, E. D. April 19, 1918.)

No. 837.

1. PATENTS ⬥73—DATE OF INVENTION—PRIOR FOREIGN PATENT.
   As against a claim of anticipation or an infringer, the effective date of invention of a device first made and patented in a foreign country and afterward patented in the United States is the date of the foreign application.

2. PATENTS ⬥328—VALIDITY AND INFRINGEMENT—VACUUM TANKS FOR AUTOMOBILES.
   The Higginson and Arundel patent, No. 1,067,814, and the Jay patents, No. 1,132,273 and No. 1,134,457, each for a vacuum tank for automobiles, cover improvements and disclose invention, but none is for a wholly suc-

cessful structure, and all must be narrowly construed. As so construed, *held* not infringed.

3. PATENTS ⬤⇒9—IMPROVEMENT PATENTS—CONSTRUCTION AND SCOPE.
Where an art has been advanced step by step by a series of inventions so that no one inventor can claim the complete whole, each inventor is entitled to the specific form of device which he produces so far as it differs from those of his competitors.

In Equity. Suit by Webb Jay and the Stewart-Warner Speedometer Corporation against Frederick Weinberg and the Auto Parts Company. On final hearing. Decree for defendants.

George L. Wilkinson and Charles S. Burton, both of Chicago, Ill., for plaintiffs.

R. A. Parker, of Detroit, Mich., for defendants.

SANBORN, District Judge. Infringement suit on patents No. 1,-067,814, issued to Higginson & Arundel, 1,132,273, to Jay, and 1,134,-457, to Jay, upon a vacuum tank for automobiles. The suit involves earlier forms of the vacuum tank commonly used for raising the gasoline from a main tank located below the carbureter, and supplying it to the latter by gravity. The Stewart-Warner Company has supplied the tank in the commercial form, not made under the patents in suit, to about 140 manufacturers, and in the three years ending last January has so supplied 1,595,577 tanks. The commercial structure does not follow strictly any of the patents in suit, but contains certain improvements covered by a later patent not in suit taken out by Mr. Jay, being No. 1,125,549. Defendants' tank is made under a patent to Weinberg, No. 1,229,360.

There are three methods of carbureter supply now in practical use. The gravity system is used on Ford Cars and some others, where the supply tank is placed under the front seat, or the wind shield. In the pressure system as used by the Packard Company and others the feed is placed under a slight air pressure, sufficient to force it up to the carbureter. The third system is that now under consideration.

All feeding systems are objectionable, but the vacuum system is the least so. While the gravity feed is pretty good, it makes a variable instead of constant pressure on the carbureter, and on a low level in the feeding tank it is sometimes impossible to get up a hill without backing up. The pressure system is difficult to keep in order and wasteful of gasoline. The vacuum system will get out of order, like any complicated mechanism, but this is not a serious defect.

In a general way the problem was to lift gasoline by suction from a main tank to the vacuum tank standing at a higher level than the carbureter, and periodically break the suction in order to allow the liquid so lifted to flow by gravity to the carbureter, or into a receptacle or storage tank connected with it. Suppose the main supply tank is at the rear of the car. A pipe is carried from the bottom of this tank to the top of the vacuum tank so that the fuel may be pumped up by the suction of the engine. The engine manifold is then connected with the vacuum tank by a pipe inserted at the top of the latter. In order

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that the connection between the vacuum tank and the carbureter may always be under normal air pressure, the tank is made in two compartments, the lower open to the air and the upper one only subject to suction. When suction is on, the upper chamber must be air-tight, and the opening therefrom to the lower one closed. So the suction must be broken periodically in order to keep up the supply of fuel, and this is most efficiently accomplished by a float in the vacuum chamber. When the float is lowered, the suction is turned on, liquid fills the upper chamber and raises the float, thereby shutting off suction and admitting air to break the vacuum. The liquid then flows by its own weight into the lower chamber until the float lowers enough to close the vacuum chamber and again turn on the suction.

The essence of the structure, therefore, resides in the vacuum tank, in means to create a vacuum therein so that liquid may be drawn into it, and in means for stopping the drawing in by suction and restoring atmospheric pressure to the suction tank. This involves: (1) A suction connection with a source of supply; (2) a suction connection with a source of suction; (3) a receptacle in which suction is created; (4) means in the receptacle when it is filled with liquid by which the suction is cut off and atmospheric pressure restored; and (5) means to permit the flow of the liquid outwardly from the receptacle, which means must be closed by something when the suction takes place so as to allow suction and perhaps prevent liquid being drawn up by virtue of the suction.

All these essential things had been done by inventors in the art of raising water by suction, notably by Savorgnan, No. 566,625, August 25, 1896, and Frings & Mueller, No. 232,638, September 8, 1880. All that remained for inventors in the automobile fuel supply line was first to discover that the water system was applicable and then make changes in that system to fit it for the new conditions. So far as this record is concerned, this transformation has not even yet been accomplished unless by the defendant Weinberg. It might, indeed, be considered invention to take over this water system and successfully apply it to the very exacting conditions of automobile use, and the person who was able to do this might be thought a worthy inventor; but we do not know who he is. Jay's commercial tank has been highly successful. Weinberg's has also been successful to the limited extent it has been tried. Both Jay and Weinberg claim priority, but this record affords no means for determining the question.

Of course, it is urged by plaintiffs that Savorgnan and Frings & Mueller are not in the same art, but it seems they should be so regarded, as they were in the patent office. In an amendment to the specification of the Jay double tank patent it is said: "It will be obvious that other liquids than fuel may be fed by the device described." Regardless of the uses to which such an apparatus may be put, it is all in the art of raising liquids from a low level to a high level by alternating suction and discharge by destroying the suction. It is not correct to say that the automobile art, so called, is entirely distinct in itself, because the apparatus used is precisely the same thing and works in exactly the same way and attains exactly the same result whether

employed in raising water from a low level to a high level or in raising gasoline from a low level to a high level. There may be other considerations and other circumstances which may modify the delivery, but that is not a part of the liquid-elevating device. For instance, it might be desirable to not have too much head under the carbureter of the car; it might be desirable to place the main liquid tank low enough so that the tilting of cars on grades would not affect the action by reason of causing the apparatus to overflow; it might be desirable to modify the apparatus in some other respect due to the heating and expansion of liquids or boiling point of gasoline. But none of these things affects in the slightest degree the structure, the principle, and the mode of operation of that water-elevating device of Savorgnan placed between the low-liquid receptacle and the high-liquid receptacle for the purpose of transferring liquid from one to the other. It is not analogous use, nor a new use; it is the same use of the apparatus.

This question of analogous art is not so important, however, because, in a number of patents later than Savorgnan but earlier than Higginson & Arundel, the water system was applied to the raising of liquid fuel. In the following patents the engine suction is utilized for lifting fuel to the carbureter: Seager, No. 984,032; Olds, No. 792,-158; Grovelle & Arquembourg, No. 741,962; Harrington, No. 983,-994; and Peterson, No. 986,892.

[1] In 1911 Higginson & Arundel, Tice, and the French inventor Hamelin, all tried their hand at the problem of applying a vacuum system to an automobile. On May 29, 1911, Higginson & Arundel filed a British application, and on May 23, 1912, their American application on which the patent in suit was issued. The foreign application date is therefore the effective date of this patent. Welsbach Light Co. v. American Incandescent Light Co., 98 Fed. 613, 39 C. C. A. 185; Badische Anilin & Soda Fabrik v. A. Klipstein & Co. (C. C.) 125 Fed. 543. See, also, Tilghman v. Proctor, 102 U. S. 711, 26 L. Ed. 279; Burt v. Coates, 246 O. G. 1031.

[2] The elements of the Higginson & Arundel claims are as follows: (1) The main supply tank at a lower level than the carbureter; (2) upper and lower chambers of the vacuum tank; (3) a suction connection with either the carbureter inlet or manifold; (4) a float for turning suction on and off; (5) a check valve in the conduit between the two chambers opening towards the carbureter; (6) a liquid conduit from main tank to upper chamber; (7) a check valve in said conduit; (8) a valveless air-port to the upper chamber; (9) a conduit from lower tank to carbureter; and (10) an open-air standpipe for the lower chamber.

These inventors failed because they used a constantly open, valveless air-port of very small capacity (called a "snifting valve") for the purpose of breaking the vacuum, instead of the valved inlet controlled by the float as in Savorgnan, Tice, Hamelin, Jay, and Weinberg. The first claim is the only one in suit, and it applies to any liquid supply, whether fuel or not. From the practical standpoint they failed because the only one of their drawings which shows their vacuum pipe discloses the source of suction to be the carbureter intake instead of

the manifold; and because they said in their description that, while the source of suction might be the engine cylinder, yet the preferable form was as illustrated; in other words, their preferable form was in-operative.

In June, 1911, there was published in a trade paper called Motor an elaborate illustrated article written by P. S. Tice, and denominated "Pressure Feed Without Pressure." About 7,000 copies of this number of the paper were circulated. The tank illustrated in this article has about the same elements as Higginson & Arundel, but has certain grave faults which render it unsatisfactory as a practical device. It supplied the valved air-port worked by the float which Higginson & Arundel lack, and also the spring snap-action device for the float which Jay adopted and improved. The Tice device was thoroughly demonstrated on the trial, and was practically tested on a car for a long time by Mr. Carter. It is operative, but has faults which prevent its being a practical device, designed to meet ordinary road conditions.

In November, 1911, a French patent was issued to Hamelin for an automatic carbureter, which utilizes engine suction to draw fuel into a tank to supply the carbureter, and in which a float in this tank breaks and restores the suction.

The Jay single tank patent was applied for September 12, 1913, and issued April 6, 1915, as No. 1,134,457.

One advance claimed in the Jay single tank patent is making the manifold the source of suction instead of the carbureter intake. More in detail the claim is that because Higginson & Arundel show the intake connection as the "preferred form," but the engine connection as an "alternate one," therefore it required an inventive act for Jay to connect the suction pipe with the engine. Further, although Tice shows the engine-manifold connection, yet it is said because his device is an impracticable one it would require invention to do what he did in a connection with a practicable device. The question of invention or advance in the art is thus viewed entirely from a technical standpoint, wholly apart from novelty or prior knowledge or use by others.

A further advance is claimed in valve control of the air inlet to the vacuum chamber. Plaintiffs admit this to be the same as the Tice drawings, but because Tice is an impracticable structure separate elements cannot be used to anticipate a practical structure. But while it is true that Tice will not work under all conditions, the same is also true of the Jay devices. They will work much better than Tice, but they will not meet extraordinary conditions.

In the Patent Office proceedings leading up to patent No. 1,134,457, the gist of the invention was claimed to consist in the "very radical feature of distinction" between applicant's construction and that of Higginson & Arundel of placing the suction connection in the engine-manifold. The argument to the examiner is put on the ground, not that "this radical and essential feature" is not adverted to by Higginson & Arundel, but that, "in practice, the Higginson & Arundel mode of connection renders the device inoperative; and the inventor who

failed to observe that the mode of connection which he described and showed defeated the practical operation of his device cannot anticipate an inventor who discovered that a different connection rendered it operative," even though such different connection was suggested by the earlier inventor, without seeing its importance. Obviously such a situation ought not of itself to defeat a patent, though it might require little invention.

The tank made under this patent was used on an automobile on a trip from Detroit to Chicago, and numbers were furnished to manufacturers for trial. No sales of this type were made.

The Jay double tank patent, No. 1,132,273, was applied for five months later than the other, February 24, 1914, and issued March 16, 1915, so that the applications were copending for thirteen months.

The gist of this application was the spring-snap action to make and break the suction. This had been fully described and illustrated in the Tice article, which had not yet come to the notice of the Patent Office. Hence we find in the file wrapper a long argument as to the very great importance of having the exhaust and air-vent valves operate simultaneously. All its elements are in Higginson & Arundel or Tice, but there is an improved mode of operation and result. One of the tanks made under this patent was placed on a car belonging to the Kissell Company, at Hartford, Wis., and was in satisfactory use for a year. It was not put under the hood, as is now always done, but outside, in the car. When placed under the hood, trouble was experienced in hot weather from the expansion of fuel in the lower chamber.

Infringement: The only claim of Higginson & Arundel relied on is as follows:

"1. In combination, a main liquid tank, a source of suction, a supplementary vessel (upper chamber) receiving its liquid from said main tank, an auxiliary vessel (lower chamber) receiving its liquid supply from said supplementary vessel, means for simultaneously isolating the latter from the source of suction and from the main tank and placing it in communication with the auxiliary vessel, and means for admitting air to said supplementary vessel, as set forth."

This claim seems to cover all the elements of the patent except (7) the check valve in the main supply pipe, (9) the conduit from the lower tank to the carbureter, and (10) the open-air standpipe for the lower chamber. In at least two important particulars it is not met by Weinberg's tank. The claim requires that the upper tank be isolated from the main tank, but this never occurs in Weinberg's device. The main supply pipe is always open, never changes in any way; and therefore cannot be isolated by the action of the float. The claim also contains the air-port, which is defined by the specifications and drawings to be the hole in the top of the upper chamber. Weinberg's upper tank gets its equalizing air from the lower tank by a different means and mode of operation.

While Mr. Jay did not solve by either of his patents in suit all the difficulties of the vacuum-tank problem, yet it would be entirely unfair to one who has finally solved that problem, and whose product in another form is being so largely used, to say that, because the advance in

these two patents was small and technical, they should not be sustained. They are part of the final success, and may be considered as small steps in advance. Commercial success did not attend them, but such success is important only to help out doubtful validity. Commercial success, however great, does not prove infringement.

Ten claims of the two Jay patents are alleged to be infringed by the Weinberg tank. On examining that tank it is found that it does not contain one element made vital by the Jay patents, which is the breaking of the vacuum by admitting air by the rising of the float in one patent, and by a normally open valve in the other. It is necessary to break the vacuum at the proper time, but this will not result from merely shutting the suction pipe connecting with the manifold. In addition, it is necessary to admit air in order that the fuel may find its way to the carbureter. This element is essential to the operation of the tanks made under both patents, though not contained in some of the claims. If defendant does not use this element or an equivalent, he does not infringe. Rowell v. Lindsay, 113 U. S. 97, 5 Sup. Ct. 507, 28 L. Ed. 906.

Weinberg's tank, on the other hand, substitutes for this open air-vent a pipe connecting with the lower or storage chamber. This equalizer pipe runs from the top of the lower chamber to a point above the upper wall of the vacuum chamber, and is there connected by valves both with the atmosphere and the vacuum chamber. Whenever the lower chamber needs air the valve in this air pipe lifts and supplies it, and whenever the feed in the vacuum tank rises to the predetermined point another valve is pushed off its seat to connect the upper tank with the lower, and thus break the vacuum. If any further air is needed to accomplish this, the open air valve in the equalizer pipe opens and supplies it. From this difference Weinberg has referred to his as the "closed system," and to plaintiff's as the "open system."

There are other differences between the devices, such as opening the equalizer pipe slightly before cutting off suction, and the Jay outlet valve being normally closed while Weinberg's is normally open. The most vital distinction, however, is the substitution of the closed system for the open system.

[3] Inasmuch as all the elements in these Jay patents are old, and the inventions did not solve the vacuum-tank problem, and the tanks made under them have been superseded by the later construction, it seems to be necessary to decide that they are not infringed. They are unavoidably narrow. By no fair reasoning are they entitled to be any more than sustained on the ground that Mr. Jay, working along his own lines, which later brought success, is entitled to his own construction; and the same rule applies to Weinberg.

"If the advance towards the thing desired is gradual, and proceeds step by step, so that no one can claim the complete whole, then each is entitled only to the specific form of device which he produces. and every other inventor is entitled to his own specific form, so long as it differs from those of his competitors, and does not include theirs." Adams El. Ry. Co. v. Lindell Ry. Co., 77 Fed. 432, 23 C. C. A. 223, quoting from Railway Co. v. Sayles, 97 U. S. 554, 24 L. Ed. 1053.

It is true that some of the Jay claims do not count on this open air-vent, but the plaintiffs can have no benefit from that fact. The patents are on combinations of elements, not on the elements themselves. An essential element of the combination is the means of breaking vacuum by the air-port connection. It is the full combination which by the statute the inventor is required to claim:

"He shall particularly point out and distinctly claim the part, improvement. or combination which he claims as his invention or discovery."

He is not authorized to claim two or four out of the six elements of his combination, but the whole six; and, if he fails to comply with the statute, the court will read into the claim the omitted elements for the purpose of examining into its validity or infringement. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 558, 18 Sup. Ct. 707, 42 L. Ed. 1136.

It is true, of course, that a patentee may claim two or more combinations, if they actually exist, and one may include another; but each must be a complete combination in and of itself, and not a portion only. Gordon v. Warder, 150 U. S. 47, 14 Sup. Ct. 32, 37 L. Ed. 392.

The three patents in suit are sustained and held not infringed. Bill to be dismissed, with costs.